UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| LaSHAWN BOOKER, | CIVIL ACTION NO. 5:14-179-KKC |
| Petitioner, | |
| V. | **MEMORANDUM OPINION AND ORDER** |
| FRANCISCO QUINTANA, | |
| Respondent. | |

**\*\*\* \*\*\* \*\*\***

LaShawn Booker is an inmate confined by the Bureau of Prisons ("BOP") at the Satellite Campus of the Federal Medical Center ("FMC")-Lexington located in Lexington, Kentucky. Proceeding without an attorney, Booker has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging a prison disciplinary conviction which resulted in the loss of 27 days of good-time credits ("GTC"). Booker seeks an order expunging that disciplinary conviction and reinstating her forfeited GTC.

In conducting an initial review of habeas petitions under 28 U.S.C. § 2243, the Court must deny the relief sought "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)). Because Booker is not represented by an attorney, the Court evaluates her petition under a more lenient standard. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). Thus, at this stage of the proceedings, the Court accepts as true Booker's factual allegations and liberally construes her legal claims in her favor. As explained below, Booker's habeas petition will be denied because she has not alleged

facts which would warrant relief from either her disciplinary conviction or the sanctions imposed.

## BACKGROUND

On March 2, 2013, Booker was assigned to the Atwood Food Service detail as a food server. On that date, "A." Rivello, an FMC-Lexington official, signed an Incident Report in which he charged that Booker had stolen six oranges from the dining room at 8:35 a.m. that day. [R. 1-2, p. 4] The charged offense was listed as a violation of BOP Prohibited Acts Code ("PAC") 219. [*Id.*, § 10] In the Incident Report, Rivello stated that he observed Booker carry the oranges on a tray to the table nearest the exit door of the dining room, place the oranges under her grey coat and in her coat pockets, leave the dining room, and run down the hall. [*Id.*, § 11] Rivello stated that he lost sight of Booker, but that he reported Booker's actions to Officer Gilbert, who located Booker with no further incident. [*Id.*]

The Unit Disciplinary Committee ("UDC") referred the charges to a Disciplinary Hearing Officer ("DHO") for resolution. [*Id.*, § 18(B)] On April 12, 2013, a disciplinary hearing transpired at FMC-Lexington, and at Booker's request, a staff representative appeared on her behalf. DHO Timothy Smart presided over the hearing, and on April 30, 2013, Smart prepared a Report summarizing all aspects of the proceeding. [*Id.*, pp. 8-11] Booker gave a statement at the hearing, which DHO Smart summarized as follows:

> I was not stealing. Mr. Rivello gave each of us a muffin because there was extra muffins and bagels. I got a muffin and ate it. I never took anything out of the dining hall. Mr. Rivello had already put up all of the oranges. I did not run from him either.

[*Id.*, "Summary of Inmate Statement"]

Booker called five other inmates (Martin, Whitlow, Hargis, Sherrill, and Sandoval) as witnesses to testify on her behalf, and DHO Smart also summarized their testimony.

2

[*Id*., p. 9]  According to DHO Smart, these witnesses testified that Booker did not steal any oranges; that Rivello had offered all of them a muffin that day in the dining room; and that Booker had eaten one of the muffins that Rivello had offered to them.  [*Id*.]

DHO Smart nevertheless found Booker guilty of the stealing offense, stating that although he considered Booker's and the other inmates' statements, he was more persuaded by the reporting employee's version of the events in question.  [*Id*., pp. 9-10, "Finding of the DHO"]  DHO Smart stated that although the other inmate-witnesses testified that Booker was eating a muffin and not an orange, "I don't believe Mr. Rivello would confuse muffins and oranges.  I believe Mr. Rivello knows the difference between an orange and a muffin; as any reasonable person would.  In other words, muffins and oranges are not easily confused."  [*Id*.]  DHO Smart determined that based on the greater weight of the evidence, Booker was guilty of stealing the oranges in violation of the PAC 219 offense.  [*Id*., § V ]

The DHO imposed sanctions consisting of 15 days of disciplinary segregation; 180 days of lost commissary privileges; and 27 days of forfeited GTC.  [*Id*., p. 11]  The DHO explained that Booker's theft of the oranges posed "…a serious threat to the ability of staff to provide for the feeding of the institution population," and that her conduct kept "…that food from being used for other inmates which can precipitate arguments and unrest."  [*Id*.]

Booker appealed her conviction to the BOP Mid-Atlantic Regional Office, again arguing that the evidence upon which DHO Smart based his findings was insufficient and that numerous inmates had testified that she did not steal any oranges.  [R. 1-2, p. 23]  Booker did not attach the Regional Office's response, but apparently that office denied her appeal, because she then appealed to the BOP Central Office [R. 21].  In that final administrative appeal, Booker again argued that the evidence upon which the DHO had relied was insufficient.  She also claimed that her TRULINCS e-mail records and her

TRUFONE transactions for March 2013 substantiated that she could not have stolen the oranges on the date and at the time alleged in the Incident Report. [*Id*.].

On November 21, 2013, the BOP Regional Office denied Booker's final administrative appeal, concluding that although Booker and her witnesses disputed the allegation in the Incident Report, her disciplinary conviction was based on sufficient evidence; that Booker could and should have produced any exculpatory documents, such as phone and e-mail records, at the hearing, not for the first time on appeal; and that all disciplinary procedures were substantially followed. [*Id*., pp. 22; p. 26][1]

## CLAIMS ASSERTED IN § 2241 PETITION

In her § 2241 petition, Booker contends that the DHO violated her right to due process of law guaranteed under the Fifth Amendment of the U.S. Constitution by accepting as true the allegations of the Incident Report, instead of the version of events which she and her five witnesses advanced. Booker contends that her statement, and the supporting statements of five other inmates, should have outweighed the theft allegation asserted by one correctional officer. Booker further states that she does not own a grey coat like the one Rivello mentioned in the Incident Report; that she did not run down the hall and that Officer Gilbert did not stop her as she exited the dining hall; that her telephone records substantiate that she could not have been in the dining room at the time of the alleged theft of the oranges; and that a PAC 219 violation can be based only on the theft of computer-generated data, not oranges. In summary, Booker alleges that the evidence on which the DHO based his finding of guilt was inadequate.

Booker next asserts that she was unfairly prosecuted on the basis of her race, in violation of her right to equal protection of the law. She claims that both before and after

---

[1] The BOP Central Office's two-page Response was not docketed consecutively; the first page appears at R. 1-2, p. 22, and the second page appears at R. 1-2. p. 26.

the alleged events of March 2, 2013, two other FMC-Lexington inmates, Elizabeth Cronan and Brittany Oaks, were caught stealing food items from the kitchen, but that neither were prosecuted for theft as she had been. Booker claims that both inmates were even allowed to keep their prison job in the dining room.

Finally, Booker asserts that her punishment was excessive and disproportionate to the severity of the underlying offense. She claims that her confinement in disciplinary segregation, the loss of commissary privileges, and the loss of 27 days of GTC constituted cruel and unusual punishment. Booker also claims that she was forced to serve six additional days in disciplinary segregation, over and above the 15 days ordered as part of her sanction. Booker seeks an Order directing the BOP to expunge her PAC 219 conviction from her record, and to reinstate her 27 days of forfeited GTC.

## DISCUSSION

Prisoners who face the loss of GTC in prison disciplinary proceedings are entitled to the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974). These protections consist of: (1) written notice of the charges against him at least 24 hours before the hearing; (2) a written statement by the fact-finder as to the evidence relied upon and the reason for the disciplinary action; and (3) the opportunity to call witnesses and present documentary evidence in his or her defense. *Wolff*, 418 U.S. at 563-66.

Booker does not allege that she was denied these procedural safeguards. Her first argument is that the evidence upon which DHO Smart based his decision was insufficient for various reasons, namely because she had more witnesses testify for her than did the prosecution; that she did not own a grey coat as described in the Incident Report; and that her phone records (had she presented them at the hearing) would have exonerated her. Booker, however, ignores a key fact in making this argument, which is that a finding of guilt in a disciplinary proceeding need only be "'supported by some evidence in the record.'"

5

*Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (quoting *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985)). The "some evidence" standard is a lenient one, requiring only "a modicum of evidence," and is met if the record contains any evidence that could support the [DHO's] decision. *Hill*, 472 U.S. at 455–56. The "some evidence" standard requires only that the "disciplinary decision is not arbitrary and does have evidentiary support." *Id.* at 457.

Here, the Incident Report, standing alone, constituted the "some evidence" which supported the DHO's determination that Booker was guilty of the PAC 219 violation. Booker contends that the DHO erred by rejecting her version of the facts, and the version put forth by her inmate witnesses, but the law is clear that a DHO need not accept what the inmate perceives to be the "best" or most convincing or persuasive set of facts. *See Sarmiento v. Hemingway*, 93 F. App'x 65, 68 (6th Cir. 2004) (affirming the DHO's determination that the greater weight of the evidence supported his decision finding Sarmiento guilty of "tampering with a security device" in violation of PAC 208, even where the facts were in dispute); *Johnson v. Patton*, No. 06-CV-HRW, 2006 WL 950187, at *5 (E.D. Ky. April 12, 2006) ("While these facts are not one hundred percent conclusive of whether the petitioner violated Code 108, they are adequate facts upon which to base a prison disciplinary conviction. They constitute "some" facts upon which the DHO was entitled to rely in finding the petitioner guilty of violating Code No. 108.")

Booker next alleges that "theft" under PAC 219 means *only* the theft of electronic or computer-generated data, but she has incorrectly interpreted that provision. The clear language of PAC 291 prohibits "Stealing; theft (including data obtained through the unauthorized use of a communications device, or through unauthorized access to disks, tapes, or computer printouts or other automated equipment on which data is stored)." 28

6

C.F.R. § 541.3, Section 219 ("High Severity Level Prohibited Acts"). Thus, "traditional" theft is forbidden at BOP facilities, *as well as* the theft of the theft of electronic or computer-generated data. The language describing the prohibited action is inclusive of both forms of stealing, and is not restricted to one or the other.

Further, to the extent that Booker claims that she was falsely accused, prison disciplinary proceedings are not criminal prosecutions, and the full panoply of rights due a defendant in criminal prosecutions does not apply to prison disciplinary proceedings. *Wolff*, 418 U.S. at 556. Simply put, a prison inmate has no constitutionally-guaranteed immunity from being falsely or wrongly accused of conduct which may result in segregation. *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir.1986); *Spencer v. Wilson*, No. 6:11-CV-128-KSF, 2012 WL 2069658, at *6 (E.D. Ky. June 8, 2012); *Wei Chin v. Federal Bureau of Prisons*, 4:10-CV-1145, 2010 WL 4008846, at *2 (N.D. Ohio Oct. 12, 2010).

As noted, Booker was granted a UDC hearing at which she had an opportunity to rebut the charge filed against her, and Booker does not allege any procedural infirmities in connection with the UDC hearing. Under *Freeman*, she states no actionable Fifth Amendment claim based on Rivello allegedly filing false charges against her in the Incident Report. *See Freeman*, 808 F.2d at 952–53; *see also McMillan v. Fielding*, 136 F. App'x. 818, 820 (6th Cir. 2005) (where the prisoner was sanctioned with 10 days in lock up and the loss of package privileges, the disciplinary hearing afforded him a sufficient means of challenging allegedly false disciplinary charges brought against him).

To the extent that Booker claims her punishment was excessive, she does not set forth a claim that would warrant relief from those sanctions. Booker was charged with a violation of Code 219, a high severity level prohibited act, and all of the sanctions imposed,

7

including the forfeiture of 27 days of GTC, were authorized by BOP regulations. *See* 28 CFR § 541.3, Table 1, Prohibited Acts and Available Sanctions.[2]

Booker further alleges that she was forced to serve six additional days in segregation over and above the fifteen days confinement imposed as part of her disciplinary sanction, and that the additional confinement violated her right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment of the U.S. Constitution. [R. 1-2, p. 19] Even if true,[3] this allegation does not provide a basis for disturbing her disciplinary conviction or the sanctions imposed, because habeas corpus relief is not available to prisoners who complain about the conditions of their confinement or alleged mistreatment during their legal incarceration. *See Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004); *Sullivan v. United States*, 90 F. App'x 862, 863 (6th Cir. 2004); *Lutz v. Hemingway*, 476 F.Supp.2d 715, 718 (E.D. Mich. 2007). Complaints about specific conditions of confinement "do not relate to the legality of the petitioner's confinement, nor do they relate to the legal sufficiency of the criminal court proceedings which resulted in the incarceration of the petitioner." *Lutz*, 476 F.Supp.2d at 718 (quoting *Maddux v. Rose*, 483 F.Supp. 661, 672 (E.D. Tenn. 1980)).

If Booker wishes to assert an Eighth Amendment claim alleging that she was confined in disciplinary segregation without justification for six days, she may do so by

---

[2] BOP Program Statement 5270.07 and 28 C.F.R. § 541.13, at Table 3, set out four levels of offense severity, Prohibited Acts and Disciplinary Severity Scale, and also set out the range of permissible penalties, any of which may be imposed alone or with other sanctions on a prisoner who is found guilty of violating any listed prison offense. One of the authorized sanctions is the loss of a prisoner's GTC, the amount of time to be forfeited dependent upon the severity of the offense. In the Code 100 series, Greatest Severity Category, the offenses include Code 100, killing, and 102, assault, for which the prisoner may be penalized with the loss of 27-41 days of his GTC; the Code 200 series, the High Category, covers stealing, Code 219, the offense with which Booker was charged, and contains GTC loss of 14-27 days as a permissible penalty for offenses listed thereunder; the Code 300 series is designated Moderate, and authorizes 1-14 days GTC loss upon a finding of guilty of any offense numbered in the 300's; and the lowest category, Low Moderate, covers Code 402, malingering, and other lower offenses, and the loss of GTC therefor is limited to 1-7 days.

[3] Booker may have been placed in *administrative* segregation for the six-day period, as opposed to *disciplinary* segregation, but she does not allege facts which fully explain the situation. In any event, as explained herein, she has not properly asserted this particular claim in her § 2241 petition.

filing a civil rights action under 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).[4] The filing fee for such an action is $400.00, although Booker may seek pauper status and ask to pay that fee in installments.

Finally, Booker (who is black), alleges that she was selectively prosecuted for stealing food, while other white inmates who allegedly stole food products were not prosecuted for committing the same infraction. Specifically, Booker alleges that Rivello did not file an Incident Report against one of the white inmates, and that Officer Mastin did not file an Incident Report against the other white inmate.

The record contains no indication that during the disciplinary hearing, Booker argued she was prosecuted because of her race while other white inmates were not prosecuted under similar facts. Booker does not allege that she raised this particular issue at her hearing. Further, in neither of her administrative appeals did Booker allege that she had allegedly been targeted for disciplinary action because of her race, and that similarly situated white inmates had not been punished for committing the same infraction. Based on the documents that Booker attached to her § 2241 petition, the first time she raised this issue to anyone was in a September 3, 2013, e-mail which she sent to "Food Service." [R. 1-2, p. 26].

By not putting the issue of alleged racial discrimination before the DHO, Booker waived any argument regarding that issue as a basis for challenging her conviction and

---

[4] The Court takes no position on whether such an Eighth Amendment claim would have merit. To determine whether a liberty interest is implicated in a prison setting, the interest must be limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). The law is well established that prisoners have no protected liberty interest in remaining free of disciplinary confinement. *Id.* at 484; *Lee v. Young*, 43 F. App'x 788 (6th Cir. 2002); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). The Supreme Court has expressly ruled that a 30-day placement in disciplinary segregation does not run afoul of the constitution. *Sandin*, 515 U.S. at 486; *see also Hall v. Fuqua*, No. 10-13350, 2010 WL 3768345 at *2 (E.D. Mich. Sept.21, 2010) (finding that 30 days of detention in segregation and loss of privileges were not "atypical and significant hardship[s]" on the prisoner).

9

resulting sanctions. *See Davis v. Zuercher*, No. 7:08-CV-207-KKC, 2009 WL 585807, at *9 (E.D. Ky. Mar. 6, 2009) (finding that inmate challenging his disciplinary conviction had waived issue of mental capacity by not asserting it at his hearing). Even had Booker raised the issue at her hearing, the DHO still had "some evidence" to support the finding of guilt. As noted, a district court's role is not to re-try a prison disciplinary hearing. Federal courts will not review the accuracy of a disciplinary committee's finding of fact. *Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va.1980). Such findings will only be disturbed if they are unsupported by any evidence or are wholly arbitrary and capricious. *Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir.1981), *cert. denied*, 455 U.S. 992 (1982).

Although Booker and her witnesses vehemently disputed the facts set forth in the Incident Report, DHO Smart's findings were not wholly arbitrary and capricious. Booker has not alleged facts which would enable the Court to expunge her disciplinary conviction and reinstate her forfeited GTC. For these reasons, Booker's § 2241 petition will be denied.

## CONCLUSION

Accordingly, for the reasons discussed above, it is hereby **ORDERED** as follows:

1. LaShawn Booker's 28 U.S.C. § 2241 petition for a writ of habeas corpus [R. 1] is **DENIED**;

2. The Court will enter an appropriate judgment; and

3. This habeas proceeding is **DISMISSED** and **STRICKEN** from the Court's docket.

This October 6, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY